# MANDATE

23-8020-cv
Anthem, Inc. v. Express Scripts, Inc.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 31st day of October, two thousand twenty-four.

PRESENT: BARRINGTON D. PARKER,
GERARD E. LYNCH,
RAYMOND J. LOHIER, JR.,
    *Circuit Judges*.

------------------------------------------------------------------
ANTHEM, INC.,

    *Plaintiff-Appellant*,

v.    No. 23-8020-cv

EXPRESS SCRIPTS, INC.,

    *Defendant-Appellee*.

------------------------------------------------------------------

MANDATE ISSUED ON 02/03/2025

| | |
|---|---|
| FOR APPELLANT: | GLENN M. KURTZ (Claudine Columbres, *on the brief*), White & Case LLP, New York, NY |
| FOR APPELLEE: | DEREK L. SHAFFER, Quinn Emanuel Urquhart & Sullivan, LLP, Washington, DC (Jonathan G. Cooper, Michael J. Lyle, Quinn Emanuel Urquhart & Sullivan, LLP, Washington, DC; Ellison Ward Merkel, Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY; Alex H. Loomis, Quinn Emanuel Urquhart & Sullivan, LLP, Boston, MA, *on the brief*) |

Appeal from a judgment of the United States District Court for the Southern District of New York (Edgardo Ramos, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court is AFFIRMED.

Plaintiff-Appellant Anthem, Inc. appeals from the November 13, 2023 judgment of the United States District Court for the Southern District of New York (Ramos, *J.*), dismissing Anthem's breach-of-contract and declaratory-judgment action against Express Scripts, Inc. We assume the parties' familiarity

with the underlying facts and the record of prior proceedings, to which we refer only as necessary to explain our decision to affirm.

In 2009 Anthem sold three in-house pharmacy-benefit-management companies (collectively, "NextRx") to Express Scripts, Inc. for $4.675 billion. The parties executed two agreements governing the transaction: the NextRx Agreement, which governed the sale itself, and the Pharmacy Benefit Agreement, which designated Express Scripts as Anthem's exclusive pharmacy benefit manager for a period of ten years. Section 5.6 of the Pharmacy Benefit Agreement established a mechanism for Anthem to review and potentially renegotiate pricing every three years:

> **5.6 Periodic Pricing Review**. [Anthem] or a third party consultant retained by [Anthem] will conduct a market analysis every three (3) years during the Term of this Agreement to ensure that [Anthem] is receiving competitive benchmark pricing. In the event [Anthem] or its third party consultant determines that such pricing terms are not competitive, [Anthem] shall have the ability to propose renegotiated pricing terms to [Express Scripts] and [Anthem] and [Express Scripts] agree[] to negotiate in good faith over the proposed new pricing terms. Notwithstanding the foregoing, to be effective any new pricing terms must be agreed to by [Express Scripts] in writing.

App'x 137.

Following the second market check in 2014, Anthem sued Express Scripts. As relevant to this appeal, Anthem claims that Express Scripts breached Section

5.6 by refusing to negotiate in good faith over proposed new pricing. Anthem seeks both damages for alleged overcharges and a declaratory judgment that Express Scripts was, among other things, "required to provide competitive benchmark pricing to Anthem" under Section 5.6. App'x 99. After discovery, Express Scripts twice moved for summary judgment. The District Court granted partial summary judgment to Express Scripts in March 2022 on the grounds that: (1) Section 5.6 does not obligate Express Scripts to provide competitive benchmark pricing to Anthem, but requires Express Scripts only to negotiate in good faith about any new pricing terms Anthem may propose; (2) Anthem could not recover expectation damages even if Express Scripts breached its duty to negotiate in good faith; and (3) Anthem waived any claim it may have had to restitution for any such breach.[1] Anthem challenges each of these conclusions on appeal.

**I.      Section 5.6**

We begin with the plain text of Section 5.6. Under New York law, which governs the agreements, "the initial interpretation of a contract," including "whether the terms of the contract are ambiguous," is "a matter of law for the

---

[1] The remaining claims and counterclaims were resolved by stipulation.

court to decide." *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir. 1998) (quotation marks omitted); *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990). We conclude that Section 5.6 unambiguously obligates Express Scripts only to negotiate in good faith over any new pricing terms Anthem may propose after Anthem conducts a market analysis; it does not obligate Express Scripts to guarantee competitive benchmark pricing or agree to any new pricing term proposal.

We are not persuaded by Anthem's counterargument that the parties' use of the term "ensure" in Section 5.6 obligates Express Scripts to "guarantee" that Anthem receive competitive benchmark pricing. To the contrary, the first sentence of Section 5.6 clearly imposes an obligation on *Anthem* — the party performing the market analysis — not Express Scripts. That this sentence does not require Express Scripts to agree to new terms under its contract with Anthem is confirmed by the remaining two sentences of Section 5.6. The second sentence of Section 5.6 provides that Anthem can propose renegotiated price terms, and that Express Scripts need only thereafter negotiate in good faith over Anthem's proposed new pricing terms. *See Fairchild Corp. v. State of New York*, 94 N.Y.S.3d 292, 294 (2d Dep't 2019) (holding that "an agreement to negotiate in good faith"

5

over contract terms is "not an enforceable commitment obligating the defendant to effectuate" any particular terms); *see also Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 548 (2d Cir. 1998). And the last sentence of Section 5.6 contains a "notwithstanding" clause that plainly gives Express Scripts discretion over whether to agree to any new pricing terms. *See Warberg Opportunistic Trading Fund, L.P. v. GeoResources, Inc.*, 973 N.Y.S.2d 187, 191 (1st Dep't 2013) ("It is well settled that trumping language such as a 'notwithstanding' provision 'controls over any contrary language' in a contract."); *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 917 (2d Cir. 2010) (collecting cases).

## II. Expectation Damages

We turn next to expectation damages. For purposes of this appeal, Express Scripts did not contest that it breached its duty to negotiate in good faith under Section 5.6. Anthem seeks approximately $15 billion for Express Scripts' breach of that duty based upon Express Scripts' "anticipated performance of the obligations it would have undertaken assuming that the negotiations had progressed to an agreement." *Goodstein Constr. Corp. v. City of New York*, 80 N.Y.2d 366, 373 (1992). We agree with the District Court, however, that New York law forecloses recovery of expectation damages for such a breach. *See id.* at

6

373–74.

Urging a contrary conclusion, Anthem cites *Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*, 487 F.3d 89 (2d Cir. 2007). But *Tractebel* is inapposite. There we stated that where "the parties have agreed on all material terms of the contract and clearly manifested their intent to be bound by those terms, but have left *the practical implementation of certain terms* to be resolved in good faith negotiations at a future date, the contract will be enforced." *Id.* at 98 (emphasis added). In other words, unlike Anthem and Express Scripts, the parties in *Tractebel* had settled all material terms, and the breaching party had no discretion to reject them, leaving only their implementation to be resolved. By contrast, Express Scripts' "sole obligation . . . was to negotiate in good faith." *Goodstein*, 80 N.Y.2d at 373; *see IDT Corp. v. Tyco Grp., S.A.R.L.*, 23 N.Y.3d 497, 503 (2014).[2] We therefore affirm the District Court's ruling that Anthem could not recover expectation damages.

---

[2] Anthem's attempt to reclassify its request for expectation damages as "out-of-pocket" damages is unavailing. *See Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996); *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73–74 & n.2 (2d Cir. 1989). Because Anthem never sought out-of-pocket damages, it may not proceed on such a theory here.

### III. Restitution

Finally, we consider Anthem's claim for restitution. Although the District Court entered an order omitting Anthem's obligation to announce its damages theory in its initial disclosure, Anthem "omitted any reference to" restitution in its complaint, in response to interrogatories calling for its claimed damages theories and bases, or in any of its expert opinions. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006). Nor does the record reflect any supplemental disclosures as required by Rule 26(e) of the Federal Rules of Civil Procedure. Anthem therefore waived any claim that it was entitled to restitution. And even assuming for the sake of argument that a claim for restitution was not waived, the claim here is not practically different from Anthem's claim for expectation damages, and we reject it for the same reason as above.

We have considered Anthem's remaining arguments and conclude that they are without merit. For the foregoing reasons, the judgment of the District Court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

8